### HORTON v. BENSON et al. (No. 8527.)*

(Court of Civil Appeals of Texas. Galveston. Nov. 12, 1924. Rehearing Denied Nov. 26, 1924.)

**1. Highways ⚖️184(2)—Petition for injuries in collision held not to plead facts showing contributory negligence, so as to change burden of proof.**

In action for injuries to occupants of automobile, sustained in collision with truck parked on highway without lights, petition *held* not to plead facts showing driver guilty of contributory negligence, so as to change burden of proof.

**2. Negligence ⚖️138(2)—Charge placing burden of proof on issue of contributory negligence on defendant held not misleading.**

Charge placing burden of proof on issue of contributory negligence on defendant *held* not misleading, as calculated to cause jury to infer that only evidence offered by defendant could be considered on such issue.

**3. Trial ⚖️352(1)—Special issues held not on weight of evidence.**

In action for injuries sustained in collision with truck, special issues as to whether certain facts existed at or about the time of "injuries complained of," and whether or not the failure to have any tail-light on truck "at the time of the injuries complained of, was the proximate cause of the injuries," *held* not so framed as to lead jury to believe that court was of the opinion that the injuries complained of by the plaintiffs had been proven.

**4. Appeal and error ⚖️1064(2)—Instructions on weight of evidence held harmless in view of undisputed evidence.**

Instructions, if erroneous in leading jury to think that court believed plaintiffs had suffered injuries, *held* harmless, where undisputed evidence showed that plaintiffs had suffered injuries.

**5. Highways ⚖️179—Truck which driver had temporarily stopped on highway was being "operated" within State Highway Law.**

Truck which driver had temporarily stopped on highway, with intention to continue within a few moments was being "operated" within State Highway Law, requiring automobiles to carry lights when in "operation" during certain times of the day.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operate.]

**6. Trial ⚖️352(1)—Submission of special issue of negligence held not erroneous for failure to define "negligence."**

Submission of special issue of whether truck driver was negligent in not having tail-light burning *held* not erroneous for failure to define "negligence," in view of definitions thereof in other portions of charge.

**7. Appeal and error ⚖️1068(4)—Instruction authorizing jury to consider future suffering held harmless, in view of verdict.**

Instruction authorizing jury to consider probable future suffering in fixing damages *held* harmless, in view of award of only $100.

**8. Trial ⚖️352(1)—Special issue of automobile driver's negligence in not heeding warning given by driver of truck parked on highway held proper.**

In action for injuries sustained in collision of automobile with parked truck, submission of special issue whether automobile driver was contributorily negligent in failing to heed warning given by truck driver, if warning was given "and was either seen or heard" by automobile driver, *held* not erroneous because of quoted portion.

**9. Appeal and error ⚖️1062(1)—Special issue held harmless, in view of special finding.**

In action for injuries sustained in collision between automobile and parked truck, special issue of plaintiff's negligence in not heeding warning given by truck driver, if driver was seen and warning heard, if erroneous, in view of duty to keep lookout, was harmless, in view of special finding that plaintiffs were keeping a lookout.

**10. Damages ⚖️208(1)—Damages for disfigurement and physical pain is matter for jury.**

The question of adequate compensation for disfigurement and physical pain and suffering must be left to the jury.

**11. Trial ⚖️127—Testimony that witness gave number of defendant's truck to insurance agents held not ground for reversal.**

In personal injury action, testimony that witness gave number of defendant's truck to insurance agents, and remarks of plaintiff's counsel in connection therewith, in absence of showing as to connection of agents with the matter in controversy, *held* not ground for reversal.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Grover C. Benson, Sr., and others, against George F. Horton. Judgment for plaintiffs, and defendant appeals. Affirmed.

Sewall Myer and Ball, Merrill & Ball, all of Houston, for appellant.

Fulbright, Crooker & Freeman and W. J. Walden, all of Houston (W. B. Bates, of Houston, of counsel), for appellees.

LANE, J. This suit was brought by Grover C. Benson, Sr., and his wife, Mrs. Florence Benson, in their individual capacities, and also as next friends for their minor children, Jean Benson and Grover C. Benson, Jr., for the recovery of damages for personal injuries, as well as property damage, sustained as the result of the Ford automobile in which they were riding colliding at

night with a truck belonging to appellant, Horton, while it was standing on the road between Dickinson and Galveston, in Galveston county, Tex. No effort was made to separate the causes of action, and the case was tried as a single suit before a jury. The plaintiffs alleged:

That between the hours of 7 and 8 o'clock p. m., on the 18th day of November, 1921, they were riding in a Ford automobile, owned and driven by Grover Benson, Sr., on the public highway en route from the town of Dickinson to the city of Galveston. That the plaintiffs, other than Grover Benson, Sr., were occupying seats in said automobile upon the invitation of said Benson. That at the time they left Dickinson it was dark, and they had to turn on the lights of the automobile, which was done. That such lights, as required by law in such cases, were kept burning from the time they left Dickinson until the occurence of the alleged accident. That said automobile was, before and at the time of the accident, being driven in a careful and lawful manner at about 12 or 15 miles per hour. That at the time and place of the collision they were about to meet and pass another car with bright headlights, coming in the opposite direction, and that plaintiff Grover C. Benson, Sr., slowed down the speed of his car and just as he was about to meet and pass the aforesaid automobile going in the opposite direction, he saw for the first time the motor truck of appellant standing in the public highway directly in front of him, and so close that it was impossible to stop his automobile before crashing into the rear end of said truck, breaking the windshield, and completely demolishing the Ford automobile, and throwing the occupants thereof from their seats with considerable force into the broken windshield and wreckage of said automobile, and thereby painfully and seriously injuring all of the plaintiffs. That the truck belonging to appellant was being operated by an employee in pursuit of the business of appellant, and was being so operated more than half an hour after sunset *and at a time of day when it was dangerous to other parties using the public highway, without any lights of any kind upon the truck, either headlights or tail-lights*, and that the said truck was headed in the same direction that plaintiffs were going. That the failure of appellant to have headlights or a tail-light on said truck after dark was the direct and proximate cause of the collision and accident, and the injuries resulting therefrom. (Italics ours.)

That the public highway upon which the truck was stopped was straight for several miles each way at the point where the collision occurred, and if there had been headlights or a tail-light burning, as required by said State Highway Law, the plaintiff Grover C. Benson, Sr., who was driving the Ford automobile, could and would have seen the said light in time to have avoided the collision. That the plaintiff Grover C. Benson, Sr., was driving his car with care at the time, and at a low rate of speed, having slowed down for the purpose of passing another automobile going in an opposite direction. That he did not see the truck standing in the road directly in front of him until he was so close that it was impossible for him to bring his car to a stop before colliding with the same. That if the tail-light on the car had been lighted he could and would have seen the same in plenty of time to have avoided the collision.

Plaintiff also pleaded the State Highway Law, requiring automobiles when in operation during the period of one-half hour after sunset to one-half hour before sunrise to carry lights therein named. Then followed allegations setting out the nature of the injuries suffered by the respective plaintiffs, and the damage to the automobile in which they were riding. It was then alleged all of said injuries and damages were the direct and proximate result of the negligence of the defendant in the following particulars:

"(a) That appellant's employee violated the Texas State Highway Law regulating motor vehicle traffic, by having said truck stopped on the right-hand side of the public highway after dark, without lights of any kind.

"(b) That appellant's employee was guilty of negligence in stopping his truck after dark on the public highway, without lights of any character.

"(c) That appellant's employee was guilty of obstructing the public highway by leaving his truck parked on the right-hand side of the public highway at night, without lights of any kind, and without placing a signal of any kind or doing anything to give warning to plaintiffs or other persons using the highway; or, if said employee did make an attempt of any kind to give warning to plaintiffs, then same was not sufficient to and did not attract the attention or give warning to plaintiffs that the truck was stopped at said point."

Defendant answered by general denial, and the following special pleas:

"(a) Special denial that the truck was being operated within the meaning of that term as used in the State Highway Statute at the time of the accident, but that said truck had run out of gas, and that the employee in charge thereof had parked the same on the right-hand side of the road as far from the road as the condition of the road would permit.

"(b) That the headlights on the truck were burning at the time of the accident, and that the said employee was endeavoring to light the tail-light.

"(c) That the failure to have lights on the truck was not the proximate cause of the injury, but that said collision was proximately caused by the act and conduct of some person who came along the highway from the direction of Galveston and passed the automobile in which plaintiffs were riding shortly before the

accident, driving at a high and dangerous rate of speed, and with glaring headlights, as a result of which the plaintiff Grover C. Bènson, Sr., became confused and blinded, and drove his automobile into the rear end of the truck, and that, except for the negligence of the person driving said automobile from the direction of Galveston and the consequent confusion and blindness of plaintiff Grover C. Benson, Sr., the accident would not have occurred.

"(d) That· the plaintiff Grover C. Benson, Sr., was guilty of contributory negligence in the following particulars:

"(1) That he was driving said car at an excessive rate of speed, did not have proper control over his automobile, and was unable to stop the same after discovering the existence of the truck, and that if he had operated his automobile in a reasonably careful and prudent manner, and at a reasonable rate of speed, the accident would not have occurred.

"(2) That just before the accident happened, another car passed coming from the direction of Galveston at a high and dangerous rate of speed, and with glaring headlights burning; that said headlights blinded and confused the plaintiff Grover C. Benson, Sr., so that he did not discover the existence of appellant's truck alongside said road; that he was guilty of contributory negligence in failing to slow down his automobile or bring the same to a stop during the time his vision was obstructed by said glaring headlights, so as to render it impossible for him to see obstructions in the road ahead of him.

"(3) That plaintiffs Benson and wife were guilty of contributory negligence in riding in so crowded a condition, all of four of the plaintiffs being in the front seat, as to render it impossible for the driver of their car to stop his automobile before striking the. truck, after discovering the same.

"(4) That after appellant's employee had stopped the truck, he discovered the approach of plaintiffs' automobile, and he thereupon left the truck and started toward the approaching automobile of plaintiffs, and shouted his warning; but that plaintiffs wholly failed to observe or heed the same, and continued to drive their automobile at a high and dangerous rate of speed until the collision occurred.

"(5) That plaintiffs were guilty of contributory negligence in failing to keep a proper lookout.

"(6) That plaintiffs were guilty of contributory negligence in failing to comply with the law requiring automobiles being operated at night to carry two lighted lamps showing white lights visible under normal atmospheric conditions at least 500 feet in the direction toward which such automobile was facing."

Plaintiffs filed their supplemental petition, in which they specially denied the acts of contributory negligence charged, and pleading that Mrs. Florence Benson and the two children were, at the time of the accident in question, the guests of Grover C. Benson, Sr., who was on his way to Galveston on a business mission, and that, if Grover C. Benson, Sr., was guilty of contributory negligence, which was denied, that the same could be in no wise imputed to his coplaintiffs, Mrs. Florence Benson, Jean Benson, and Grover C. Benson, Jr.

The trial court, in the first paragraph of the charge, told the jury selected to try the case, that the case would be submitted upon special issues, and that in arriving at their answers thereto they should look to all the facts and circumstances of the case as shown by the evidence relative to each of the issues to be submitted. Then followed, instructions as to the meaning of the terms ' "negligence," "contributory negligence," and "proximate cause," with the further instruction as follows:

"The burden is upon the plaintiffs to prove by a preponderance of the evidence the facts * * * upon which they rely for recovery. The burden is upon the defendant to prove the facts involved in his plea of contributory negligence against the plaintiffs by a preponderance of the evidence. Guided by the foregoing instruction, you will answer the following special issues. * * *"

In answer to the special issues submitted, the jury answered:

(1) That the injuries complained of by the plaintiff occurred during the period between one-half hour after sunset to one-half hour before sunrise.

(2) That there were no headlights burning on the truck of the defendant at the time of the injuries complained of by the plaintiffs; that the driver in charge of defendant's truck was guilty of negligence, as that term is defined, in failing to have such headlights burning at the time said injuries· were received, and that such failure was the proximate cause of said injuries.

(3) That the driver in charge of defendant's truck was guilty of negligence in failing to have any tail-light burning at the time of said injuries, and that such failure was the proximate cause of such injuries.

(4) That the several plaintiffs suffered damages by reason of personal injuries caused by the collision, as follows: Grover Benson, Sr., $400; Mrs. Florence Benson, $2,-500; Jean Benson, $2,000; Grover Benson, Jr., $100.

(5) That Grover Benson, Sr., suffered damage to his automobile by reason of said collision in the sum of $100, and that he suffered damage in the sum of $100, in that he incurred doctor's and medicine bills by reason of such collision.

(6) That neither Grover Benson, Sr., nor Mrs. Florence Benson were guilty of contributory negligence in any of the manners pleaded by the defendant.

Upon the answers of the jury to the issues submitted, and upon the evidence, judgment was rendered in favor of Grover Benson, Sr., against the defendant, George F. Horton, for the following sums: $400 for personal injuries; $100 for damage to his automobile; and $100 for doctor's and medicine bills incurred by him. And judgment was also ren-

dered in favor of the other plaintiffs, respectively, for the several amounts found for them by the jury. From such judgments, the defendant has appealed.

[1] By assignments 1, 2, and 3, appellant makes the contention that the judgment should be reversed, because it appears that the plaintiffs pleaded facts showing that they were guilty of contributory negligence, and by further pleading undertook to explain away or excuse such contributory negligence, and therefore the burden was upon the plaintiffs to prove the facts relied upon by them as excusing the negligence pleaded in the first instance, and that, notwithstanding such burden was upon the plaintiffs, the court instructed the jury that the burden of proof on the issue of contributory negligence was upon the defendant; that such instruction constitutes reversible error, in that it was calculated to cause the jury to infer therefrom that it could, in determining such issue, consider only evidence offered by the defendant.

There is, we think, no merit in such contention. We do not agree with the contention that the plaintiff pleaded facts showing negligence upon the part of Grover C. Benson, Sr., the driver, or of any one of the plaintiffs, which contributed to the collision. Plaintiffs, as already shown, did allege that Grover Benson, Sr., was driving his automobile along the public highway at night from Dickinson to Galveston; that he had his automobile properly lighted and was driving the same in a lawful manner, at a rate of speed of from 12 to 15 miles per hour; that, as he was proceeding on his way, and just before the collision, he was blinded and confused by the brilliant lights of an automobile coming from the direction of Galveston, and that, as he swerved to the right to avoid contact with said automobile, he discovered the auto truck of the defendant standing in and on the right side of the highway, and so close to him that it was impossible for him to check his automobile and avoid the collision; that the truck of defendant had on it neither headlights or tail-light.

The defendant pleaded that, just before the collision took place, a car coming from the direction of Galveston at high and dangerous rate of speed, and with glaring headlight burning, blinded and confused the plaintiff Grover Benson, Sr., so that he did not discover the existence of defendant's truck.

[2] In the first paragraph of the charge the jury was told that in answering the special issues submitted they should look to all the facts and circumstances of the case relative to the respective issues, and, after having given such instruction, the court further told the jury the burden was upon defendant to prove its plea of contributory negligence by a preponderance of the evidence. We do not think the charge of the court as a whole could have had the effect attributed to it by appellant. However, we are of the further opinion that in any event the charge could not have injured appellant in the manner complained of, in that the matter pleaded by the plaintiffs as to why they did not see the truck sooner was not only shown by the undisputed evidence, but it was specially pleaded by the defendant as a fact.

[3] In submitting special issues Nos. 1, 2, 3, 5, and 6, the court instructed the jury to answer as to whether they found certain facts existed at or about the time of the "*injuries complained of,*" and as to whether or not the failure of the defendant to have any tail-light burning on his truck, "*at the time of the injuries complained of by the plaintiffs, was the proximate cause of the injuries to plaintiffs.*"

By assignments 5, 6, 7, 8, 9, and 11 appellant insists that by the submission of such issues the court so framed them as to lead the jury to believe that the court was of the opinion that the *injuries complained of by the plaintiffs had been proven.*

[4] We think it obvious that the mention of "the injuries complained of by the plaintiffs" in special issues 1, 2, 3, 5, and 6 was made only for the purpose of directing the minds of the jury to the incident inquired about, and we cannot imagine that the jury would look at it in any other light, at least they could not have reasonably understood from the wording of such special issues that the court meant to or did express a belief that the plaintiffs suffered the specific injuries as alleged by them. If, however, the special issues did have a tendency to lead the jury to a conclusion that the court believed the plaintiffs suffered some manner of injuries, we would not reverse the case for that reason, because the undisputed evidence shows that each of them did suffer an injury, and therefore an expression of the court, intimating that he believed they suffered injuries, would not be cause for reversal of the judgment.

By the fourth assignment it is insisted that the court erred in giving the following charge:

"Did the injuries complained of by plaintiffs occur during the period between one-half hour after sunset to one-half hour before sunrise?"

The contention of appellant under this assignment is that by the undisputed evidence it is shown that the truck of defendant was standing on the highway, and was being operated upon the highway within the meaning of the statute, requiring lights upon motor vehicles while being operated during the night, which was pleaded by the plaintiffs.

[5] We think the undisputed evidence shows that the truck was being operated upon the highway at the time of the collision. We think it illogical to hold that a motor

truck that is being operated on a highway, and is temporarily stopped on such highway by the driver with the intention on his part to continue his operation within a few moments, is not within the meaning of the statute referred to being operated on the highway. Such construction of the statute would be a very narrow construction, and would defeat the purpose for which the statute was enacted.

We agree, however, with appellees in their contention that the decision of the question as to whether the motor truck was being operated at the time of the collision was unnecessary and wholly immaterial, as the court, under relevant allegations of the plaintiffs, submitted to the jury the question as to whether or not appellant's truck was standing on the highway without lights, and as to whether a failure to have such lights was an act of negligence resulting in injury to plaintiffs, and as the jury in answer to such questions gave affirmative answers to each of them. It is therefore apparent that judgment was not rendered upon a finding that appellant was guilty of negligence as a matter of law, but that it was rendered upon the answers of the jury to the questions last mentioned.

[6] The court submitted to the jury the following question:

"Was defendant's driver in charge of * * * Horton's truck guilty of negligence in failing to have any tail-light burning at the time of the injuries complained of by plaintiffs?"

By his tenth assignment appellant insists that the court erred in submitting such question in the manner and form as submitted, in that he failed to instruct the jury in connection with such injury that in determining the question of negligence they should be governed by the definition of "negligence," as that term is defined in the charge.

We overrule the assignment. In the second paragraph of the charge the court told the jury that the term "negligence," as used in the charge, means the failure to use ordinary care, and that ordinary care as used means the care that a person of ordinary prudence would use in the same or similar circumstances. We think any jury of ordinary intelligence could have understood that, in deciding the question of negligence relating to any phase of the case, they should be governed by the definition of negligence as given by the court.

By the thirteenth, fourteenth, sixteenth, nineteenth, twenty-third, and twenty-fourth assignments presented by appellant under his sixth proposition, it is insisted that the evidence shows that the injured parties had recovered from their injuries at and before the time of the trial of the case, and therefore the court erred in instructing the jury that in fixing the amount of damages to be awarded they might take into consideration any probable future suffering.

[7] There is, we think, no merit in the assignments. We think there was evidence justifying the court in the submission of the question as to probable future suffering by Grover Benson, Sr., Mrs. Florence Benson, and Jean Benson, and as to Grover Benson, Jr., to whom an award of $100 only was made. We are not disposed to reverse the judgment in his favor upon the grounds here contended for. In making so small an award, it is not even probable that the jury, in view of the evidence, based any part of the award on probable future suffering.

The court submitted to the jury the following question:

"Was or was not the plaintiff Grover Benson, Sr., guilty of contributory negligence in failing to heed the warning, if any, given him by the operator of the defendant's truck immediately preceding the collision, if you find that such warning was given by said operator *and was . either seen or heard ,by said Benson?"* (Italics ours.)

The same question was submitted relative to Mrs. Benson. The jury answered both questions in the negative.

By assignments Nos. 27, 28, 36, and 40, presented by his proposition 7, appellant insists that the court erred in adding the words in italics to the question submitted, in that it was the duty of appellees Benson and wife to keep a proper lookout ahead of them, and that therefore the inquiry as to whether the appellees were guilty of contributory negligence in not heeding the warning given should not have been limited, as was done by the italicized words.

[8, 9] We cannot agree with appellant that adding such words to the charge was error, but, if such was error, still, in view of the fact that immediately following the question objected to the court asked the jury whether or not Mr. and Mrs. Benson were at the time of or immediately preceding the collision keeping a lookout for obstructions in the roadway while their automobile was being operated, and in view of the further fact that the jury in answer to such question found that they did keep such lookout, we think it improbable that that part of the charge objected to did in any way injure appellant and therefore we decline to reverse the judgment upon the grounds urged.

We overrule the twenty-ninth, thirtieth, and thirty-first assignments presented by appellant's eighth proposition, wherein it is contended that it is shown that Benson, Sr., was guilty of contributory negligence in driving his automobile against appellant's truck. There was, we think, both pleading and evidence justifying a finding that Benson, Sr., was not guilty of contributory negligence as urged.

By the assignments 42 to 53, inclusive,

covered by propositions Nos. 9, 10, 11, and 12, the awards made to the several plaintiffs, respectively, are attacked as excessive.

[10] What the amount of damage is in dollars and cents cannot in the very nature of things be accurately stated by the party suffering personal injuries, such as disfigurement and physical pain and suffering, and the question of adequate compensation for such injuries, therefore, must be left to the jury. In 8 Ruling Case Law, § 215, p. 673, the following rule is announced:

"In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and unless so large as to indicate that it was the result of passion, prejudice, or corruption, or that the evidence has been disregarded, their verdict is conclusive, and will not be set aside as excessive, either by the trial court or on appeal. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation, and so, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, that the results attained do not shock the judicial conscience. The courts will of course interfere with the verdicts of juries when it is manifest that they are the result of corruption, prejudice or passion; and so it is the province of the court to set a verdict aside, where it clearly appears to be excessive, or where the jury in rendering it appear to have disregarded the testimony. The amount awarded must bear some reasonable proportion to the injury sustained. However, since it is for the jury and not for the court to fix the amount, a verdict will not be set aside merely because it is large, or because the reviewing court would have awarded less."

We think the rule stated should apply in the present case. While we might not have awarded so large a sum as damages to Mrs. Benson and Jean Benson as was found by the jury had the question been submitted to us, we are unable to say that the awards are so clearly excessive as to authorize us to interfere with them.

By his assignment 55, appellant complains of the remarks counsel for the plaintiffs made to the plaintiff Grover Benson, Sr., while he was being cross-examined by counsel for defendant, and by assignment 56, he complains of the remarks of the court in passing on the objection of counsel for defendant to the remarks made by opposing counsel. If any of the matters complained of were improper, still, in our opinion, there was nothing in them to prejudice the minds of the jury against appellant, and therefore should not be cause for reversal of the judgment.

[11] By the fifty-seventh and last assignment complaint is made of a certain question propounded by counsel for appellee to the witness Neill Masterson and the witness' answer thereto. By appellant's bill of exception relative to the matter complained of it is shown that while the witness was on the stand he testified that he went to the place of the collision, and saw Benson, Sr.; that he, Benson, took Mrs. Benson to another car, and then came back for the purpose of getting the number of the truck; that witness told Benson that he would get said number, and for him to go ahead and take his wife and children to the hospital at Galveston; that he got the number of the truck; that after such testimony had been given counsel asked the witness the following question: "Did you get the number?" To which the witness replied: "I did, and turned it over to Mr. Brown Rice." Whereupon counsel for plaintiffs asked: "Who is he?" To which the witness replied: "He is of Rice & Belk Insurance Company. He came to see me about it first." These proceedings were objected to upon the theory that it tended to inform the jury what connection the insurance firm of Rice and Belk had with the matter. Upon such objection being made, counsel for the plaintiff stated: "I don't want to go into that unless you object." Whereupon counsel asked for a bill of exception to the testimony of the witness and to the remarks of opposing counsel. The court then said: "The most I can do is to instruct the jury to disregard it. I will do that now." Counsel for plaintiffs then said: "I want to say here I did not know who the man was, and as far as I am concerned I am perfectly willing to join in the court's instruction for the jury not to consider it." The court then said: "The testimony is excluded, and the jury will not regard it."

What connection Rice & Belk had with the matter in controversy in this suit, if any, is not even remotely disclosed to the jury by the things complained of. Does it disclose that they had insured the truck of defendant Horton? Or that they had insured Benson's automobile? Or that they had issued accident insurance policies to one or more of the plaintiffs? Or that they had any connection with the matter whatsoever as insurance men? We do not think the matters complained of were calculated to in any manner influence the jury in arriving at their verdict, and, so believing, the assignment presenting such matter is overruled.

We have carefully considered all of appellant's assignments, and have found no reversible error presented by any of them. Therefore the judgment is in all things affirmed.

Affirmed.